## Commonwealth *v.* Meyers, Appellant.

Argued September 27, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

Before GRAFF, P. J., specially presiding.

*William R. Kalson,* for appellant.

*Henry X. O'Brien,* Assistant District Attorney, with him *Russell H. Adams,* District Attorney, for appellee.

OPINION BY RENO, J., December 9, 1943:

The sole question is whether the Commonwealth's wholly circumstantial evidence sustains appellant's conviction of receiving stolen goods.

The uncontradicted evidence is that on January 24, 1943, the premises of Joseph M. Beatty in Pittsburgh were burglarized and 4000 spark plugs stolen. They were "Auto Lite" plugs and known as types T-9, T-7, B-7, TH-8, TH-4, and F-11. The TH-4s were a new type, specially developed for heavy duty automobile trucks, were still in "the experimental stage", and comparatively few had been sold. The F-11s were originally designed for the old Model T Ford, and Beatty had machined them to fit later Ford models.

On March 11, 1943, appellant offered to sell and delivered to Harrison-Shields 240 "Auto Lite" plugs of the T-9, T-7, B-7, TH-8, and TH-4 types. Later, the police discovered forty of the F-11 type in appellant's place of business. The plugs were not so marked that they could be positively identified as Beatty's, and the Commonwealth relied upon other circumstances to raise the conclusion that they were Beatty's and had been unlawfully acquired by appellant.

The plugs were manufactured by Electric Auto Lite Company which sells its products through forty-four wholesale distributors or factory branches throughout the country. Its Pittsburgh distributor is the Bendix-Westinghouse Brake Station and its territory extends

north to Oil City; west to Steubenville, Ohio; south to Clarksburg, West Virginia; and east to Cumberland, Maryland. All wholesale sales within that territory are made by Bendix. The sole retailer in Pittsburgh is Beatty who supplies plugs to large fleets of automobile trucks like Harrison-Shields which operates 141 trucks. The nearest retailer outside of Pittsburgh is located at Greensburg. Of the TH-4 plugs only two lots were sold by Bendix, one to Beatty and one to the Greensburg concern. Thus, unless appellant acquired the TH-4 plugs from a source outside of the Bendix territory, he must have secured them from Beatty or the Greensburg retailer.

Appellant's business has been the buying of used spark plugs and other automobile accessories and, after rebuilding and reconditioning them, selling them as second-hand goods. He never bought or sold new spark plugs. When he offered to sell the plugs to Harrison-Shields he represented that he had bought them as bankrupt stock. Later, he told the police that he "bought them from a man somewhere in the South Side district," a man he met on the street and whose name he did not know. When he was requested to come to the detective bureau and look at men then in its custody, and who the police suspected were implicated in the Beatty burglary, for the purpose of picking the person from whom he had purchased the plugs, he failed to appear. Moreover, when the police interviewed him at his place of business, he stated at first that he had no new plugs, but under some prodding he admitted that he had sold new plugs to Harrison-Shields several days previously. He was then asked whether he had any more new plugs, and he said he had not; but when the police began to search his premises he admitted he had some in a cabinet and from it he produced four cartons of "Auto Lite" F-11s.

Appellant did not testify nor call witnesses on his

own behalf. He contended in the Court below and here that the Commonwealth did not prove beyond a reasonable doubt that the plugs he delivered to Harrison-Shields came from Beatty and, more particularly, that the Commonwealth was obliged to eliminate every possibility of a doubt by showing that appellant had not bought the plugs from the Greensburg concern or from any of the retailers throughout the country who are supplied by the forty-four "Auto Lite" wholesale distributors. The complete answer to this contention is that the burden resting upon the Commonwealth to prove its case beyond a reasonable doubt does not require it to demonstrate the utter impossibility of innocence. The true rule has been laid down by President Judge KELLER in *Com. v. Marino,* 142 Pa. Superior Ct. 327, 334, 16 A. 2d 314: "When a crime charged is sought to be sustained wholly by circumstantial evidence the circumstances proved should be such as reasonably and naturally to justify an inference of the guilt of the accused, and should be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt."

The circumstances proved in this case reasonably and naturally justified an inference of guilt. The plugs were not available in the open market; in Pittsburgh they could be purchased only from Beatty; and comparatively few of the TH-4 plugs had been sold. That circumstance did not prove that the plugs were Beatty's but it did supply a tentative base for the jury's thinking. When there was added to that circumstance the undisputed fact that appellant had never dealt in new plugs and was, therefore, engaged in what was for him an unusual enterprise; and the further and highly significant circumstance that appellant made various and contradictory statements to the police and others, including the stories of the methods by which he acquired the plugs,—describing devious methods or, at

least, questionable, irregular and incredible methods,— the jury was supplied with a foundation for a verdict of guilty. The evidence was sufficient, under the rule of *Com. v. Marino,* supra, to sustain the conviction. In the absence of an explanation by appellant (which, to be sure, he was privileged to withhold) it is not difficult to understand why the jury did not entertain a reasonable doubt of his guilt.

The judgment is affirmed and it is ordered that the defendant, if released on bail, appear in the court below at such time as he may be there called and that he be committed by that court until he has complied with his sentence or any part of it which had not been served at the time his appeal was made a supersedeas.