## Commonwealth *v.* Vogle, Appellant.

Argued October 14, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*Maurice L. Epstein,* with him *William G. Schrier,* for appellant.

*C. Wayne Smyth,* District Attorney, for appellee.

OPINION BY WRIGHT, J., January 19, 1954:

Appellant and her sister operate a small soda fountain and magazine store in the Borough of Towanda. Robert Clancy, who operates a contracting business in said Borough, reported to the Borough Police that certain tools were missing. Investigation developed the fact that the theft had been committed on November 9, 1952, by a fourteen year old boy, Robert Lamphere. The boy accompanied the investigating officers to appellant's place of business where he identified her as the person to whom he had sold the tools

for a small fraction of their value. Appellant stated that she did not have the tools. A search warrant was obtained and a pair of electrician's pliers, a hammer, a crescent wrench and a tape measure, all identified by Clancy, were found in a cupboard back of the soda fountain in appellant's store. There was evidence that appellant had purchased various articles for small sums from the boy in the past, and that the boy's mother had requested appellant to make no further purchases. There was also evidence that appellant objected to the search and, while it was in progress, offered to pay for the stolen articles. The evidence was conflicting in many particulars, and no useful purpose would be served by further detailing it here. It is sufficient to say that the jury returned a verdict of guilty of receiving stolen goods. The lower court refused to grant a new trial, and this appeal followed.

Appellant's complaint is directed entirely to the charge of the trial judge. She contends that the charge was argumentative in favor of the Commonwealth, and was unfair and prejudicial to the defendant. After reviewing the charge in its entirety, we have concluded that it was thorough, unbiased and actually more favorable to appellant than it might have been under the circumstances. Since appellant alleges that a number of excerpts from the charge are objectionable, we must of necessity set them forth seriatim, although none merit extended discussion. Excerpt 3 was particularly stressed, and we will consider it out of order at the conclusion of our opinion.

Excerpt 1 is the statement: "Members of the jury, it is for you to say whether the officers told you the truth when they say they found them down there." Excerpt 2 is the statement: "The testimony is, on the part of some of these officers, that the property was found back of the counter. Now, it's for you to say whether it

was found there or not—whether they are telling the truth, and what inferences may be drawn therefrom". These two statements referred to the testimony of the police officers that the stolen tools were found back of the counter in appellant's store. In effect, the trial judge submitted the question of the officers' credibility to the jury, even though their testimony on this point was not disputed. The jurors were entirely free to decide the factual issues. See *Commonwealth v. Baker,* 146 Pa. Superior Ct. 559, 22 A. 2d 602.

Excerpt 4 is the statement, in connection with the testimony of Robert Lamphere: "He also said, and I don't recall that this was denied—that's for you— that she did not ask him where he got them. Now, would a person buying for an honest reason ask a boy of this age, who came in day after day right along for five days, or intermittently, or however you find it to be—would she ask him where he got those articles, and if she didn't ask him, would she be failing to ask so she wouldn't have a guilty conscience?" We do not find anything objectionable in this statement. It was proper for the trial judge to propound questions which might logically arise from the testimony, and present them to the jury for its consideration. See *McLain v. Commonwealth,* 99 Pa. 86.

Excerpt 5 concerned certain notes introduced by appellant tending to show that the boy had from time to time brought articles to the store for sale from his aunt or parents. A review of the evidence does not indicate that any of these notes had relation to the particular tools in question. The testimony as to the handwriting on the notes and the signatures thereto was contradictory. The trial court charged: "You will note that one was signed Rondey (sic) Lamphere. This boy's name is Robert. Rodney would be his father, I believe. I believe he said his father's name was Rod-

ney. Yet there is no proof here that the father ever gave him consent to take the goods down to her place. Also, there is a note which is not signed at all, and there is one just signed 'Lamphere'. What would this defendant do under the circumstances? Would she know or have a right to believe that those notes were sufficient?". It was entirely within the jury's province to consider what credence the appellant might properly or honestly have placed in such notes.

In the course of the trial, testimony was given by the Chief of Police, Meredith, and by a member of the police force, Spitulnick. Meredith testified that the defendant said she had bought nothing from Robert Lamphere. Spitulnick testified that the defendant said she had bought nothing from Robert "in a long time". Excerpt 6 is that portion of the charge wherein the trial judge stated: "Now, considerable has been said here in argument about whether or not his (Meredith's) statement differs from that of Mr. Spitulnick. It has been argued that Mr. Spitulnick said that she hadn't bought anything from this Robert Lamphere in a long time. Of course, there is a difference. Ladies and gentlemen of the jury, that may convince you that these officers are not getting together to conjure up a story to put anyone in jail". The first two sentences emphasized a conflict in the officers' testimony which was to appellant's advantage. The third sentence simply suggested another point of view. It was not unfair or prejudicial.

The evidence shows that appellant attempted to prevent the officers from searching the cupboard back of the soda fountain. Excerpt 7 is the statement: "Now, members of the jury, in that same connection, I believe that the Chief testified that Miss Vogle blocked, or attempted to block him when he went to make a search in this particular cupboard. Was she

then trying to conceal something in that cupboard? If she was, you may also, if you see fit, consider that evidence of guilt". It is well established that attempts to conceal may be considered evidence of guilt. See *Commonwealth v. Dock*, 146 Pa. Superior Ct. 16, 21 A. 2d 429.

Excerpt 8 is the statement: "Also, the Chief testified that she offered to pay him twenty-eight dollars if he would not go on with the search. She said that she didn't want the notoriety. The sum and substance, if true, and again it is for you, is just this—she could get out of all of her trouble for twenty-eight dollars, whereas if he went on and made a search and found the goods, she would then be subject to a charge of receiving stolen goods. Now, the Commonwealth says, wouldn't she be willing to pay twenty-eight dollars to get out of that— wouldn't the notoriety of it be the search and would that show the guilt? Who is right and what inference will you draw from that". It was proper for the jury to consider the effect of this evidence. The trial judge would have been justified in expressing his own opinion: *Commonwealth v. Watts*, 358 Pa. 92, 56 A. 2d 81.

Excerpt 9 is the statement: "Robert Lamphere was called again, and he was asked if he didn't bring articles with him in a bag, and I believe he testified sometime that he did. Now, is that also another circumstance,—that he had the tools down in the bottom of the bag with shells on top of them? I guess at one time he said he had them in his pocket. Where he had them you may consider important because if he carried them down the middle of the street in his hands, you may infer from that that she would have a right to conclude that he had nothing to conceal, whereas if he took them down the street in a bag under shot gun shells, or whatever, then you may conclude something different—that he had something to conceal, and that she had addi-

tional cause to know that they were stolen". Excerpt 10 is the statement: "Cora, her sister, said that she, Caroline, was asked if she had bought anything from Robert Lamphere and that Caroline said 'not lately'. Now then, does that corroborate the officers? Was this woman denying this—was she trying to evade or conceal something?". Here again, the trial judge was properly calling the possible inferences to the attention of the jurors, leaving to them the right to draw such conclusions as they deemed proper.

Coming now to Excerpt 3, to which counsel for appellant devoted the major portion of his argument, Robert Lamphere testified for the Commonwealth and admitted the theft of the tools and the sale to appellant. At the time of the trial he was an inmate of Glen Mills School, to which institution he had been committed on February 16, 1953. However, the commitment was actually based on offences prior to the Clancy theft. In the excerpt objected to by appellant, the trial judge said: "This young boy was called, and he tells you that he is in Glen Mills School. You know that that is a correctional institution. Under the circumstances, you have a right to take into consideration the fact that there was a plea of guilty in connection with this crime . . ." This excerpt must be read in connection with the statement which follows immediately. ". . . and that this testimony comes from a tainted source, and you may decide that you may not want to believe him, unless his testimony was corroborated by testimony which you may consider to be corroborating testimony".

Appellant is correct in asserting that the boy had not "entered a plea of guilty in connection with this crime". He had, however, freely admitted his guilt on the witness stand. Consideration of the entire sentence reveals that it was in fact favorable to appellant

in emphasizing the question of the boy's credibility. Excerpts from a charge must be read in relation to the context: *Commonwealth v. Glenn,* 321 Pa. 241, 183 A. 763; *Commonwealth v. Becker,* 326 Pa. 105, 191 A. 351; *Commonwealth v. Stelma,* 327 Pa. 317, 192 A. 906; *Commonwealth v. Schurtz,* 337 Pa. 405, 10 A. 2d 378. In any event, a conviction will not be reversed because of errors in the charge of the trial judge which do not deprive defendant of the fundamentals of a fair trial: *Commonwealth v. Barnak,* 357 Pa. 391, 54 A. 2d 865.

The judgment is affirmed, and it is ordered that appellant appear in the court below at such time as she may be there called and that she be by that court committed until she has complied with her sentence, or any part of which had not been performed at the time the appeal was made a supersedeas.