## Commonwealth *v.* Cohan, Appellant.

Argued October 8, 1954. Before RHODES, P. J., HIRT, ROSS, WRIGHT, WOODSIDE and ERVIN, JJ. (GUNTHER, J., absent).

*Thomas D. McBride,* with him *Herbert F. Holmes, Jr.,* for appellant.

*Samuel Dash,* Assistant District Attorney, with him *Michael von Moschzisker,* First Assistant District Attorney and *Richardson Dilworth,* District Attorney, for appellee.

OPINION BY WOODSIDE, J., January 14, 1955:

This is an appeal from the judgment of sentence of the Court of Quarter Sessions of Philadelphia.

The appellant was found guilty by a jury on the charge of receiving stolen goods. After the trial court had refused motions for arrest of judgment and for a new trial he was sentenced to 2 years probation on condition that he pay $500 for the use of the county.

We think the judgment should be affirmed.

The defendant, Cohan, was a dealer in jewelry and operated a smelting company in May 1951 when Robert Smith started to sell him jewelry and gold which had been stolen.

Smith, it develops, had committed eleven burglaries —stealing jewelry and other property valued by the owners at approximately $50,000. All of the jewelry was sold to the defendant for approximately $175.

The defendant was charged with having unlawfully received from Smith a number of specific items, and was acquitted on all counts with the exception of one charging receipt of a brooch which Smith sold him for $50.

Although convicted only as to one of the many stolen items received from Smith the testimony as to

all the items is relevant as bearing upon the question of defendant's guilty knowledge that the goods were stolen. *Com. v. Joyce,* 159 Pa. Superior Ct. 45, 49, 46 A. 2d 529 (1946).

Smith was 21 years old. He was on parole at the time he was dealing with the defendant, although there is no evidence that the defendant knew this. He first came into the defendant's place of business with some smashed gold watch cases and rings which he offered to sell the defendant. Cohan asked Smith for identification and he showed him his draft card. He asked him where he got the gold and Smith said he worked for a jeweler in Mayfair, another part of the city, and that "in place of pay" the jeweler let him take old gold that was in the establishment and sell it. Cohan did not ask him the name or the address of the jeweler for whom Smith said he worked. Smith's story, of course, was a fabrication.

During the next five months Smith sold Cohan watch cases, rings, pins, diamonds, rubies and other precious metals and stones on about 9 or 10 different occasions. The watch cases and rings were usually, but not always, smashed by Smith before they were taken to defendant. As to one watch case with two rubies and a diamond he testified, "when I gave it to Mr. Cohan it was in usable condition and right now I don't believe you would be able to squeeze a watch in it . . . It's squashed." He also dealt with Cohan at other times, for such services as repairing a watch, appraising the brooch in question, and buying a ring setting for himself. Each time Smith sold anything to the defendant (with one exception), he signed a receipt which was retained by the defendant. Sometimes he signed these receipts "B" Smith, sometimes "Robert" Smith and sometimes with one address, sometimes with another.

After the first trip Cohan made reference only once to where Smith got the merchandise, and that time he said, "Are you sure this stuff isn't stolen, as I wouldn't want to jeopardize my business."

Smith was apprehended on October 19, 1951. He admitted the thefts and told the officers where he disposed of the jewelry. He was then taken by a detective to the defendant's place of business. There the detective showed Cohan his badge and asked him if he knew Smith. Cohan, who had dealt with Smith a dozen or more times within the five month's period immediately prior thereto, said he didn't.

Smith said, "You know me, I sold articles to you. These fellows have me under arrest." Smith then pointed out to the officer the cabinet drawers in which Cohan had placed some of the articles. The detective had Cohan open the cabinets and found some of the articles. Cohan then admitted knowing Smith and having gotten some articles from him.

The officer then asked Cohan about the brooch. Cohan stated he did not receive a brooch from Smith. At a later date Cohan said he recalled the brooch and had it out on consignment with some jeweler, but refused to tell the officers who the jeweler was.

The day following Cohan's arrest counsel for defendant said he would produce the brooch which he did six days later.

At the trial the defendant said he had the brooch on consignment to a Harry Paul. As to the memorandum of consignment he testified he "Discarded it in the trash basket . . . I simply tore the memo out from the book, because he had returned it; I threw it in the waste basket."

There was conflicting testimony concerning the brooch and its value. The brooch obtained from the defendant and introduced as an exhibit was identified

by Smith as one stolen by him from Howard L. Newman at Abington and sold to the defendant for $50. A Commonwealth witness testified when shown the exhibit that he "had seen this before;" . . . that to the best of his recollection "he had appraised it in 1948 for insurance purposes at $400." He could not, however, be "100% certain," the exhibit was the same pin he appraised. The description of the brooch on the record of his appraisement resembled that of the exhibit—"platinum top brooch, flower design, one diamond about 1/3 karat in center and about fifty small diamonds." The actual count of the diamonds in the exhibit was 36 instead of "about 50," but otherwise the descriptions agreed. He further testified that the brooch introduced as an exhibit and identified by Smith as the stolen one was worth about $140 "at the dealer's price,—reselling it to a dealer," and that it would be "a very good buy" for a dealer at around a $100 to $110.

The person from whom Smith said he stole the brooch was in California, and thus did not appear as a witness. The appellant contends that he is entitled to a new trial because the court did not continue the case until the owner would be available as a witness. The defendant was arrested in 1951. After 11 continuances this trial took place in 1954. It was within the discretion of the lower court whether to continue the case again for the aforesaid purpose. *Com. v. Speroff,* 169 Pa. Superior Ct. 197, 82 A. 2d 569 (1951); *Com. v. Grosso,* 169 Pa. Superior Ct. 606, 84 A. 2d 239 (1951).

It is contended by the appellant that "In a charge of receiving stolen goods, the larceny element of the charge, including proof of property, must be proved by the same type and quantum of evidence that would be necessary if the charge itself were larceny, that is,

the corpus delicti would have to be established before any admission would be admissible;" and that "the testimony of ownership given by the thief himself is not sufficient without evidence of ownership as laid in the indictment."

As authority for the first part of his proposition he cites *Com. v. Gold et ux.*, 155 Pa. Superior Ct. 364, 38 A. 2d 486 (1944).

That the property was stolen is an element of the crime which must be proven by the Commonwealth. But the owner is not the only person who can establish it.

In *Com. v. Gold,* supra, this court set aside a conviction for receiving stolen goods because the corpus delicti had not been established. The only evidence of the theft in that case was the confession of the *defendant.* Where the state's case depends upon a confession by the defendant the fact that a crime has been committed by someone must be shown before the confession will be received.

In the *Gold* case the goods were presumably stolen from a store, but when the manager of the store, a relative of the defendant, was called he made no positive identification of the goods and further said he could not be sure even if the goods came from the store, whether they had been stolen or sold. Of course there was no corpus delicti and the defendant's confession could not, standing alone, establish it.

But that is not this case. Here the theft is established, not by a confession of the defendant, but by a witness.

The point of the *Gold* case is not that the *owner* must identify the goods as having been stolen, but that if there is *no* evidence that the goods were stolen there can be no conviction for either larceny or receiving stolen goods.

To support the contention that ownership cannot be established by the thief alone in support of a charge of receiving stolen goods against another person the appellant cites *Com. v. Poots,* 18 Phila. 477 (1886).

It is almost ludicrous that we should be forced to discuss an 1886 lower court case on this point of law, but we have no choice for not only does the appellant rely upon it, but it is the only case cited in the entire brief of the Commonwealth. Thus both parties seem to think it is determinative of this case.

In the *Poots* case the defendant was charged with receiving stolen goods. He denied *receiving* them, and the only evidence that he did *receive* them was the testimony of the thief. Not only was the thief's story uncorroborated, but there were two defense witnesses who testified they were present at the alleged time and place of the delivery of the goods and none was delivered. In discussing the case the court cited Wharton in his "Criminal Law," as saying, " 'The first point to be shown in an indictment for receiving stolen goods is, that the goods were stolen, and to prove this fact the thief is a competent witness. His testimony, however, like all other accomplices, is to be severely weighed, and if uncorroborated a conviction should not be permitted to rest.' "

There is not now, and was not then, a rule of law in Pennsylvania forbidding a conviction on the testimony of an accomplice without corroboration. *Com. v. Chrostowski et al.,* 112 Pa. Superior Ct. 466, 468, 171 A. 901 (1934) ; *Com. v. Billingsley,* 160 Pa. Superior Ct. 140, 146, 50 A. 2d 703 (1947) ; affirmed 357 Pa. 378, 54 A. 2d 705 (1947) ; *Com. v. Ballow,* 171 Pa. Superior Ct. 54, 58, 90 A. 2d 363 (1952) ; Henry on Pennsylvania Evidence (1953) Vol. 2, Page 248, Sec. 798.

Even in those states where there is a statutory provision prohibiting the conviction of a defendant on the uncorroborated testimony of an accomplice, the courts have held that the thief who stole the goods "received" by the defendant is not, except in cases where they conspired together, an accomplice of the defendant, and therefore the rule does not apply. *State v. Houghton*, 62 N. W. 2d 342 (S. D. 1954) ; *Wilkerson v. State*, 265 P. 2d 739 (Okl. 1954) ; *Dickey v. State*, 266 P. 2d 480 (Okl. Cr. App. 1954) ; *People v. Davis*, 268 P. 2d 66 (Cal. App. 1954).

Furthermore, in Pennsylvania it has been held that "The rule that evidence of accomplices should be received with caution applies only when the witnesses joined in committing the particular crime for which the defendant is being tried." *Com. v. Minker*, 81 Pa. Superior Ct. 42 (1923).

The thief, probably better than any person in the world, knows whether there was a theft and can so testify, and if the fact finder believes him it establishes the fact that the goods were stolen.

The appellant contends there was insufficient evidence to sustain a conviction. The district attorney agrees; neither the trial court nor we do.

The Act of June 24, 1939, P. L. 872, Sec. 817, as amended by the Act of May 21, 1943, P. L. 306, Sec. 1, 18 PS §4817 provides:

"Whoever buys, has, or receives any goods, chattels, money or securities, or any other matter or thing, which shall have been stolen or feloniously taken, either in this Commonwealth or in any other state or country, knowing, *or having reasonable cause to know* the same to have been stolen or feloniously taken, is guilty of a felony . . ."

(The italicized part of the above was added by the amendment of 1943)

Since that amendment, one is guilty if he has reasonable cause to know the goods he receives to have been stolen or feloniously taken.

The defendant admits receiving the brooch. The evidence shows it was stolen. Did the defendant receive it knowing it to have been stolen or feloniously taken or having reasonable cause to know that it had been stolen or feloniously taken?

The jury had the exhibits and the witnesses before them. They were in a position to pass upon many questions which bear upon the guilty knowledge of the defendant. Did this 21 year old boy parolee look like "a jeweler" as the defendant said? Should this boy's story and the appearance of the goods have caused the defendant to have reasonable cause to know that at least the brooch had been stolen? Did the fact that the defendant made no inquiries and continued to deal with the boy when he gave different names and different addresses indicate guilty knowledge? Why did not the defendant at least ask this boy the name or the address of the store from which he said he was getting the jewelry? When the officers brought Smith into the store, why did the defendant who had dealt with him a dozen or more times within the last five months, deny knowing him, and then deny having received the brooch, and then refused to tell the officers where he had it? Did the defendant's failure to question this boy "jeweler" when he was getting watches fixed, and buying jewelry as well as selling it, indicate guilty knowledge? Was the brooch worth much more than the $50 the defendant paid for it? These were all matters for the jury to consider in determining guilty knowledge. An answer adverse to the defendant to any one question alone would not have been sufficient for the jury to find guilty knowledge, but all the circumstances taken together were sufficient for the jury

to make the finding it did.

In *Com. v. Pollack,* 174 Pa. Superior Ct. 621, 623, 624, 101 A. 2d 140 (1953) we said:

"Unexplained possession in the defendant of property recently stolen is evidence of guilt . . . Since the Commonwealth had no direct proof of defendant's guilty knowledge, it remains to examine the reasonableness of defendant's explanation of his possession of the toaster. His story was deemed 'unconvincing' by the court below. If his explanation, *which is clearly for the trier of fact,* is disbelieved, his possession remains unexplained and is therefore evidence against him. In addition, there was evidence that the toaster was worth much more than the price asked by defendant, a fact which may give rise to an inference of guilt. Also, Gansky testified that the defendant told him conflicting stories as to his possession of the goods." (emphasis supplied).

In *Com. v. Meyers,* 154 Pa. Superior Ct. 8, 11, 34 A. 2d 916 (1943) we said, in holding there was sufficient evidence to support a conviction of receiving stolen goods:

". . . the burden resting upon the Commonwealth to prove its case beyond a reasonable doubt does not require it to demonstrate the utter impossibility of innocence."

At another time we said, and have since repeated, the following:

"On the same principle, where the indictment charges only receiving stolen goods, unexplained possession in the defendant of property recently stolen may be evidence of guilt. 45 Am. Jur., Receiving Stolen Property, §18; 68 A. L. R. 178. But any 'presumption' (in strictness, the use of the word may be questioned where the guilt of a defendant is the issue) from such possession is one of fact and not of law

(Com. v. Newman, 276 Pa. 534, 120 A. 474) and *it is for the jury alone to say whether the guilt of a defendant is a reasonable inference of fact, fairly deducible from his possession of recently stolen property,* in the light of all the circumstances including the reasonableness of his explanation, if any, as to how he came by them." *Com. v. Joyce,* supra, page 48.

See *Com. v. Roth,* 169 Pa. Superior Ct. 88, 93, 82 A. 2d 710 (1951).

"It is well established that attempts to conceal may be considered evidence of guilt." *Com. v. Vogle,* 174 Pa. Superior Ct. 541, 547, 102 A. 2d 213 (1954).

There was sufficient evidence to go to the jury on the question of guilty knowledge.

In addition to above cases see *Com. v. Stroik,* 175 Pa. Superior Ct. 10, 102 A. 2d 239 (1954).

The original bill of indictment charges that the defendant received the stolen brooch ". . . well knowing . . . (it) . . . to have been feloniously stolen, taken and carried away; contrary to the form of the Act of the General Assembly in such case made and provided . . ." According to the district attorney, the "blue and yellow" copies of the bill which are signed by the foreman of the Grand Jury and by the District Attorney contain the words "having reasonable cause to know."

As pointed out above, the Act of the General Assembly "in such case made and provided" provides that a person is guilty of receiving stolen property "knowing or having reasonable cause to know the same to have been stolen or feloniously taken."

Under such circumstances it is our opinion that the evidence had to show what the act requires, to wit, that the accused knew or had reasonable cause to know that the brooch was stolen, and the court was correct in so charging the jury.

The charge of the Court taken as a whole we think made it clear to the jury that the defendant either had to know that the goods were stolen or had to have reasonable cause to know them to have been stolen before he could be convicted.

The bill of indictment No. 144 December Sessions 1951, charged the defendant with unlawfully receiving "certain property, to wit, eighteen pennyweight of gold of the value of ten dollars, one diamond ring of the value of five hundred dollars, and one diamond pin of the value of four hundred dollars; . . ."

The jury brought in a verdict as follows:

"Verdict: Not guilty as to Bills 138, 139, 140, 141, 142, 143, 145 and the first two counts of Bill 144. Guilty as to the third count of Bill 144, all of December Sessions, 1951."

Although the question was not raised in the court below the defendant now contends the verdict should have been entered as "not guilty," because technically there was only one count, and not three, in bill No. 144. Therefore, it is contended since the jury found him not guilty on the first count, no verdict of guilty could be recorded on that bill of indictment.

What is a "count" in a bill of indictment is sometimes confusing to judges and lawyers as well as laymen. Here the court without specific objection from either counsel told the jury while they were deliberating that "You don't have to find him guilty on all eight . . . You can find him guilty on one Bill of Indictment or *on one count in one Bill of Indictment* . . . And acquit him on the others," and to the jurors' question "But we have to return with *a verdict on every count of every bill*; is that correct?" The Court replied: "That is right." (Emphasis supplied)

It is evident that in the case before us court and counsel were treating the three separate and distinct

items contained in the indictment as three separate counts and the verdict so shows. There is no doubt or guessing as to what the jury intended. If a defendant is charged with receiving three different stolen items, even when received from the same person at the same time it is not only possible that the evidence may differ as to each item, but it is quite possible there may be guilt as to one and not to the others. The jury should be permitted to so find, and was permitted to so find in this case.

Furthermore, if the defendant had any doubts as to the meaning of the verdict he could have raised the question before the jury was discharged. The rendering of a verdict is subject to the same rules in regard to objections, exceptions and waivers as apply to all other parts of the trial. At least in civil cases failure of a party to object to a verdict can constitute a waiver. *East Broad Top Transit Co. v. Flood,* 326 Pa. 353, 357, 192 A. 401 (1937).

This question was raised for the first time on appeal. It is the long established and just rule that a trial court will not be reversed on matters in no way called to its attention, but raised for the first time on appeal, unless there has been some basic or fundamental error seriously affecting the merits of the case and imperatively calling for reversal. *Com. v. Zang,* 142 Pa. Superior Ct. 573, 577, 16 A. 2d 745 (1940).

Judgment of sentence affirmed.