J-S74018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVE ROANE | |
| Appellant | No. 1492 EDA 2015 |

Appeal from the Judgment of Sentence February 19, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015731-2013
CP-51-CR-0015746-2013
CP-51-CR-0015756-2013
CP-51-CR-0015757-2013

BEFORE: OTT, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.: **FILED NOVEMBER 21, 2016**

Steve Roane[1] appeals from the judgment of sentence entered on February 19, 2015, in the Court of Common Pleas of Philadelphia County, following his convictions[2] on four counts of theft, receiving stolen property (RSP), 18 Pa.C.S. § 3925. Roane received an aggregate sentence of seven

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Relevant to this appeal, he was also known as Kyle Roane.

[2] Roane was tried in a non-jury trial on October 17, 2014. The trial court took the evidence under advisement and issued its verdict on October 24, 2014, after which, pursuant to the official docket, Roane fled. He was apprehended shortly thereafter, still in the courthouse. **See** Docket, 10/24/2014.

to fourteen years' incarceration and was ordered to pay $6,353.00 in restitution. In this timely appeal, Roane raises a single issue; he claims the Commonwealth presented insufficient evidence to prove he knew the cars he transferred to a tow company were stolen. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

We begin with often-stated standards guiding our review:

> The standard of review for claims of insufficient evidence is well-settled. With respect to such claims, we consider the evidence in the light most favorable to the Commonwealth as verdict winner. In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt. We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. The jury was free to believe all, part or none of the evidence. This Court may not weigh the evidence or substitute its judgment or that of the factfinder.

*Commonwealth v. Devries*, 112 A.3d 663, 667 (Pa. Super. 2015) (citations omitted).

In relevant part, the crime of RSP is defined as,

> **(a) Offense defined.** --A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S. § 3925(a).

As noted earlier, the only element of the crime at issue is knowledge – whether Roane knew the cars were stolen or believed they had probably been stolen. The trial court reviewed the totality of the evidence and

concluded the evidence proved such knowledge beyond a reasonable doubt.

We agree with the trial court.

We begin our analysis by noting:

> That proof of guilt may be established by circumstantial evidence is settled law in Pennsylvania. ***Commonwealth v. Nasuti***, 385 Pa. 436, 123 A.2d 435 (1956). In a criminal prosecution, the evidence is sufficient to warrant a conviction where the circumstances proved are such as reasonably and naturally justify an inference of guilt, and are of such volume and quality as to overcome the presumption of innocence and satisfy the fact-finder of the accused's guilt beyond a reasonable doubt. ***Commonwealth v. Lewis***, 190 Pa. Super. 591, 155 A.2d 410 (1959).

***Commonwealth v. Parsons***, 335 A.2d 800, 802 (Pa. Super. 1975).

The underlying facts, as related by the trial court in its Pa.R.A.P. 1925(a) opinion demonstrate the sufficiency of the evidence.

> July 25th of 2013, Timothy Barnhill was having mechanical issues with his 2001 Oldsmobile Aurora which he parked on Fox and Abbotsford Avenues. Mr. Barnhill returned later that day and his vehicle was missing. On August 19, 2013, Larry Johnson left his 1994 Chevy S-10 at 3700 K Street from where it was stolen. On August 15, 2013, Rhea Wright went out of town and when she returned on August 26, 2013, her 1999 Mazda Protégé was missing.[3] On August 31, 2013, Tiara Dubose parked her 2000 Pontiac Grand Prix on 4300 Clarissa Street. When she returned on September 1, 2013, the vehicle was missing. Ms. Wright, Mr. Barnhill, Ms. Dubose, and Mr. Johnson all indicated

---

[3] The towing agreements for the Wright and Johnson vehicles, Commonwealth Trial Exhibits C-10 and C-8 respectively, show both vehicles were towed on August 19, 2013. The pre-printed form numbers on the top of the towing agreements are sequential, numbers 2514 and 2515, respectively.

that they did not give permission to anyone to use their vehicles.[4]

Detective Szatkowski investigated the missing vehicles and found towing agreements for the sale of all four vehicles to a company called Hooked, Inc.[5]  The agreement listed that [Roane] sold the vehicles to be junked and received around $350 for each vehicle.  On September 18, 2013, Detective Szatkowski interviewed [Roane].  In that interview, [Roane] did not remember Ms. Wright's vehicle; however, he acknowledged that the tow agreement indicated that [Roane] had junked the car and been paid $300.

[Roane] further indicated that he was called out to look at Mr. Barnhill's vehicle as a mobile mechanic.  The car had a bad motor and the person with the vehicle told [Roane] to junk it.  [Roane] paid the person with the vehicle $150 for it and received the registration and key.  [Roane] then sold the vehicle to the tow company to be junked for $350.

In his statement, [Roane] claimed that he was called to look at Ms. Dubose's vehicle and met a young, black female who had a baby with her.  The transmission was broken and the woman told [Roane] to get rid of the vehicle.  [Roane] called the tow truck, signed for the vehicle, and was paid $350.

In his statement, [Roane] asserted that he was called to Mr. Johnson's the [sic] vehicle because the passenger wheel was broken.  [Roane] said that it could not be fixed on the street, and the man with the car, who identified himself as the operator not the owner of the vehicle, told [Roane] to junk the vehicle.  The man with the vehicle paid [Roane] $45 for his work.  [Roane] called the tow company and completed the towing

_____

[4] Additionally, the evidence indicated that none of the victims knew Roane. *See* Commonwealth Trial Exhibits 2 – 5, Ownership and Non-Permission Interview Sheets.

[5] Technically, three of the agreements are with Hooked, Inc., the fourth was with Northside Towing.  However, it appears that Hooked, Inc. simply changed locations and names and became Northside.

paperwork but claimed that the tow company paid the unidentified man for the vehicle.[6]

[Roane] admitted that the tow truck drivers did not know that the individuals junking the cars were not the owners.

Trial Court Opinion at 2-3.[7]

Summarizing, the official record demonstrated that over an approximately five week time frame, Roane acted as the "owner" of four vehicles which were subsequently sold to a towing company as scrap. Although Roane delivered registration papers and a key for one of the vehicles to the tow company, he never had or claimed to have title to any of the cars he purportedly "owned." In one instance, he claimed to have purchased the car prior to his dealings with Hooked, Inc. There was no indication in any of the evidence presented at trial that Roane ever confirmed or even tried to confirm the identity of the person from whom he obtained each vehicle. Similarly, there was no evidence presented that Roane identified or tried to confirm the identity of those people as the actual owners of the vehicles in question.

_____

[6] The towing agreement contradicts the claim that Roane was not paid for the Johnson vehicle. The towing agreement lists Kyle Roane as the owner or owner's authorized representative who received a $350 pay-out for the vehicle. *See* Commonwealth Exhibit C-8, Towing Agreement #2515. Kyle Roane was also listed as the "owner" of Wright's Mazda, which had been sold to and towed by Hooked earlier in the day. *See* Commonwealth Exhibit C-10, Towing Agreement #2514.

[7] At trial, evidence was presented of a fifth car that was similarly sold and towed on August 29, 2013. Roane was acquitted of that charge.

The trial court determined,

> According to [Roane], instead of paying [Roane] for his labor for looking at the vehicles [as a mobile mechanic], the operators, out of pure charity, paid [Roane] the proceeds of junking their vehicles. These vehicles were expensive property which any reasonable person would not give away lightly.[8] Even if this Court accepted [Roane's] statement as true, these actions are so contrary to the operators' own interests that a reasonable person would have known that the transaction was illegal. This evidence is sufficient to establish [Roane] knew the vehicles were stolen when he arranged to have them towed and took the proceeds from junking them.

Trial Court Opinion at 5.

The circumstances of this case are similar to those in **Commonwealth v. Parsons**, **supra**. There, in 1973, Parsons purchased a 6 mm rifle and telescopic scope and a .410 over/under shotgun that had recently been stolen from a gun shop. The guns and scope had a combined value of $233.00, but Parsons purchased them for a combined price of $65.00 Parsons, who had owned and sold guns in the past, had a knowledge of the value of guns, but did not question the low cost of the weapons. Shortly after purchase, Parsons resold the guns for $85.00. Parsons was convicted of RSP and appealed, claiming the Commonwealth had not proved he knew the guns had been stolen. In affirming his conviction, a panel of our Court reasoned:

---

[8] As noted above, restitution for the vehicles totaled more than $6,300.00.

The evidence presented in the instant case justifies the conclusion that appellant knew or had reasonable cause to know that the guns he purchased were stolen. He purchased them from a man whom he had seen but whom he did not know well, at a Citizens' Club, for a total price of $65. Despite the unusual circumstances of the sale, appellant did not question how the seller, Frank Powell, had obtained the weapons. Instead, appellant testified that he believed Mr. Powell's story that the guns were being sold because Powell was divorcing his wife. When asked on cross-examination: 'Why would that mean that he would have to sell his guns?' appellant answered: 'How should I know. He just said he was breaking up and he wanted to get rid of his guns so I bought them.'

Appellant likewise did not question the low price he was asked to pay for the guns, although he testified that he has owned and sold many guns in the past. Appellant, therefore, had a basis on which to estimate the true value of the weapons. Appellant testified that after keeping possession 'for a day or so' he resold the weapons. The evidence that the rifle and shotgun were worth twice what appellant paid for them may give rise to an inference of knowledge that the goods were stolen. ***Commonwealth v. Cohan***, 177 Pa. Super. 532, 111 A.2d 182 (1955). In the instant case, the evidence of the low price of the guns, coupled with appellant's failure to inquire about the origin of the guns and his subsequent sale of the weapons shortly after he acquired them, was sufficient to indicate that appellant was aware that the rifle and shotgun were stolen items. As we noted in ***Commonwealth v. Meyers***, 154 Pa. Super. 8, 34 A.2d 916 (1943), the Commonwealth need not demonstrate the utter impossibility of innocence in order to prove its case. It must only offer proof beyond a reasonable doubt that the accused had reason to know that the goods in his possession were stolen.

*Id*. at 803 (citations to certified record omitted).

Instantly, Roane's abject failure to even attempt to confirm the people from whom he obtained the cars were the actual owners, combined with the low price he paid for the cars or the fact that the "owners" simply gave him the vehicle and his immediate resale of the goods, leads to the permissible

conclusion that Roane knew or had reason to know those vehicles were stolen. Accordingly, Parsons is not entitled to relief.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/21/2016