Commonwealth *v.* Marmo, Appellant, et al.

Argued September 28, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Alexander J. Bielski,* with him *Robert B. Greer,* for appellant.

*C. E. Pruger,* Assistant District Attorney, with him *Andrew T. Park,* District Attorney, for appellee.

OPINION BY STADTFELD, J., November 17, 1939:

Joseph Marmo, John Schrocki and Chester Zack were charged in an indictment with having committed robbery and with having received stolen goods. Schrocki was not put on trial; Zack was found guilty as indicted; and Marmo was acquitted on the robbery count but found guilty of the crime of receiving stolen goods. We are concerned here only with the appeal of Joseph Marmo from this conviction.

Appellant contends that no evidence was presented at the trial of the case which might properly serve as a basis for the jury's finding him guilty of having received stolen goods. This is the sole issue before us for review, inasmuch as no question as to the situs of the crime was raised at any time in the court below.

The crime is defined by the Act of 1909, April 23, P. L. 159, 18 PS §2861, as follows: "If any person shall buy, have, or receive, within the limits of the Commonwealth of Pennsylvania, any goods, chattels, moneys, or securities, or any other matter or thing, which shall have been stolen or feloniously taken, either in the Commonwealth of Pennsylvania or in any other State or country, knowing the same to have been stolen or feloniously taken, such person shall be guilty of felony . . . . . .."

In cases of criminal offenses, the Commonwealth has the burden of proving beyond a reasonable doubt each of the several elements that constitute the crime. The burden rested upon the Commonwealth in the instant case of proving: (1) that certain money had been stolen; (2) that defendant, Joseph Marmo, had received some or all of it; (3) that he received it knowing the same to be stolen. See *Com. v. Walter,* 97 Pa. Superior Ct. 244, 247.

The facts of the case, as established by the evidence

of the Commonwealth, are as follows: A small parcel of ground beyond the extension of Lincoln Avenue in the City of Pittsburgh had, for a number of years, served as a quiet and undisturbed setting for a regular Saturday crap game. This outdoor pastime had apparently been running regularly each week for a period of seven or eight years without interference or disturbance. On the afternoon of September 11, 1938, however, the regular calm surrounding the game was suddenly and rudely broken by the appearance of two masked strangers upon the scene. The game was stopped, the participants and spectators were held up at the point of a gun and robbed of an amount of money, estimated to have been between six and eight hundred dollars. Listed among the victims of the robbery, was the defendant, Joseph Marmo, who, for the time being, had merely been looking on. Without having actively joined in the game, he was, nevertheless, relieved of some eight or nine dollars. One, Chester Zack, was thereafter apprehended and convicted of the robbery, the other still remaining at large.

On the Saturday night following the afternoon on which the "stick-up" occurred, Alfred Contardi, according to his testimony as a witness for the Commonwealth, met Marmo in a dance hall in East Liberty. The latter suggested that the two go to Steubenville, Ohio. When Contardi hesitated because of the lack of funds, Marmo first stated, "We have money," and later stated, "I am going down to see Socks. He's got money." (Socks was an alias for John Schrocki, named defendant in the robbery indictment, who never was brought to trial by the Commonwealth).

Having been called for by Marmo and Contardi, Schrocki joined them, and the three of them drove to a certain house in that section of the city which Schrocki entered. He later came out with money to be used for gambling. They thereupon set out for Steubenville. Upon their arrival, Schrocki divided a number of silver dollars taken from a bag, among the three of them,

which was then lost in a gambling house. A second division of money was then made, Schrocki saying to Marmo, "That's all you are getting out of it." When the silver dollars were being "cashed" at the gambling house "one of the fellows" then stated that there was dirt on the money. Contardi testified that when he questioned Marmo with reference to the source of this money, Marmo had mentioned the Lincoln Avenue crap game. This review of the evidence constitutes the entire strength of the Commonwealth's case.

It is apparent from the testimony that the defendant, Marmo, was present at the crap game on Saturday afternoon and knew that money had been stolen there. It appears also that he knew that some money which Schrocki had brought to Steubenville had come from a Lincoln Avenue crap game. The testimony, however, shows that crap games had been running regularly for a number of years at the extension of Lincoln Avenue. There was no evidence to identify the money received by Marmo as the same money which had come from the particular crap game in progress on the Saturday afternoon of the hold-up. Furthermore, there was no evidence to support the Commonwealth's contention that the silver dollars received by Marmo was the money stolen at the crap game.

The Commonwealth's case against the defendant, Marmo, rested upon circumstantial evidence. In the combined cases of *Com. v. Benz* and *Com. v. Routley,* 318 Pa. 465, 178 A. 390, the Supreme Court stated, at p. 472, the general proposition of law applicable to the instant case, as follows: "But, when a charge of crime is sought to be sustained by circumstantial evidence, the hypothesis of guilt should flow from the facts and circumstances proved, and be consistent with them all. The evidence must be such as to exclude to a moral certainty, every hypothesis but that of guilt of the offense imputed; the facts and circumstances must not only be consistent with and point to the guilt of the

accused, but they must be inconsistent with his innocence: *Com. v. Bone,* 64 Pa. Superior Ct. 45; *Com. v. Byers,* 45 Pa. Superior Ct. 37; *Com. v. Kolsky,* 100 Pa. Superior Ct. 596. It is the duty of the trial judge, after the evidence of the Commonwealth has been fully produced, to determine as a matter of law whether the proof has been sufficient in volume and quality to overcome the presumption of innocence, and thus put the accused to a defense: *Com. v. Bone,* supra."

Where, as here, the facts which may be inferred from the Commonwealth's evidence do not exclude, to a moral certainty, every hypothesis but that of guilt and are not inconsistent with his innocence, the evidence is insufficient to establish guilt. Defendant's evidence contained nothing to aid the Commonwealth's case. Marmo denied having received any of the money as well as other matters tending to connect him with the offense and the parties involved therein. The evidence of the Commonwealth was insufficient to identify the money received by Marmo in Steubenville, as the same money stolen at the crap game, and defendant's evidence contained nothing to supply the deficiency. The testimony that the money brought into Steubenville had come from the Lincoln Avenue crap game, was insufficient to support the contention that it came from the game that had been held up. There was no evidence to show that John Schrocki ever stole the money that he had divided, nor that the money so divided had been stolen at all. The Lincoln Avenue crap game had been running for a number of years, and winnings may have come from any one or more of the Saturday sessions. This testimony cannot be said to be inconsistent with defendant's innocence, nor exclude, to a moral certainty, every hypothesis but that of guilt.

The judgment of the court below is reversed, and the defendant, Joseph Marmo, is discharged.