## UNITED STATES v. WILLIAMS.

### No. 226, Docket 20536.

Circuit Court of Appeals, Second Circuit.

May 16, 1947.

FRANK, Circuit Judge, dissenting.

Thornton J. Meacham, Jr., (Andrew R. Tyler, of New York City, of counsel), for defendant-appellant.

John F. X. McGohey, U. S. Atty., of New York City (William M. Regan, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The appellant has appealed from a judgment entered on the verdict of a jury in the District Court for the Southern District of New York. He was tried on an indictment in three counts charging the violation of Title 26 U.S.C.A. Int.Rev. Code. Secs. 2590(a), 2591(a) and 2593(a). The first count was dismissed on the district attorney's motion and the conviction was on the two remaining. On the second count, which alleged the transfer on March 8, 1946 of 10 cigarettes containing marijuana without a written order on the form required by the statute, the imposition of sentence was suspended and he was placed upon probation for three years. On the third count, which alleged that on March 21, 1946 the appellant, then being a transferee required to pay the transfer tax imposed by Sec. 2590(a) of the Internal Revenue Code unlawfully acquired about 1.9 ounces of marijuana and about 17 cigarettes containing marijuana without having paid the tax, the appellant was sentenced to imprisonment for a term of 18 months.

The appeal raises questions as to claimed trial errors including the sufficiency of the evidence to support the verdict and judgment on count 2 and the admissibility of certain evidence received in support of count 3.

■ There was undisputed evidence on which the jury might have found, as evidently it did, that on March 8, 1946 two agents of the Federal Bureau of Narcotics went with an informer to the vicinity of a tailor's shop on Seventh Avenue in New York City where the appellant was employed. They gave the informer some money and sent him into the shop to try to buy from the appellant cigarettes containing marijuana, having searched him before he left them. They saw him go into the shop and talk with the appellant but did not see the appellant hand anything to him. When the informer returned to the agents, he had 10 cigarettes which contained marijuana. It is now argued that the evidence is short in that, while it established the fact of a search of the informer by the agents, it did not show the

result of the search and consequently it was not proved that the informer did not have the cigarettes when he went into the shop to meet the appellant. It is true that the record does not show that the agent who testified that the search was made was asked directly whether it disclosed that the informer had any marijuana. Apparently that he had none was taken for granted at the trial as being implicit in the evidence showing that the search was made, and certainly had appellant's trial attorney not then have so understood it, he could easily have made the fact appear explicitly by asking the witness a direct question to ascertain whether the informer had the cigarettes when he went into the shop. He had ample opportunity to do so. While that fact could have been proved by circumstantial evidence, United States v. De Normand, 2 Cir., 149 F.2d 622, we think this proof of it was direct. It seems abundantly clear that the jury reasonably found from the evidence that the informer had no marijuana cigarettes when he approached the appellant and reasonably inferred that he did purchase and procure the 10 cigarettes containing marijuana from the appellant. United States v. Valenti, 2 Cir., 134 F.2d 362. The conviction on the second count is affirmed.

■ Following the occurrences above mentioned, the agents on March 21, 1946 returned to the tailor shop without a warrant, entered it, and at once arrested the appellant who was there at work. One of them searched the shop and found 17 cigarettes containing marijuana in a coat which the appellant then denied was his but later admitted he owned. Although the arrest was made without a warrant, the knowledge of the agents as to what had happened when the informer obtained the cigarettes was enough to give them reasonable cause to believe that he was committing a felony by continuing violation of the above statutes, and to make his arrest lawful. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; United States v. Lindenfeld, 2 Cir., 142 F.2d 829. The search of the immediate vicinity where his coat was found was consequently lawful. Agnello

v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409.

He was then told by the agents that they wanted to search the apartment where he lived on a street some distance away and such a search was made without a warrant. The court did not admit any evidence thereby obtained until after an inquiry was conducted in the absence of the jury to determine whether the evidence was admissible. During these proceedings the district attorney introduced evidence to show that the appellant consented to the search of his apartment and voluntarily went there with the agents to let them in where they found 1.9 ounces of marijuana.

█ After the trial judge had made this inquiry he ruled that the evidence obtained through the search of the apartment was admissible, but he made no express finding of record that the appellant consented to the search. The appellant's trial attorney objected at some length to the ruling and persisted in arguing that it was not admissible because, "Even from the testimony he (the agent) gave here there is a compulsion on the part of this defendant to go to that house." The judge then remarked, "I am going to let you argue that to the jury. If the jury find these men coerced the defendant and it was not a voluntary allowance of the search they will find him not guilty." The jury was then recalled and the evidence obtained in the search was admitted. True to his word, the judge did submit to the jury the fact of the appellant's consent to the search and instructed it to disregard the evidence so obtained if consent was not found to have been freely given.

It is now urged that this was error and we agree, but we do not agree that it was reversible error.

It was for the trial judge to determine on the evidence introduced in the absence of the jury whether the appellant voluntarily consented to the search and that evidence was ample to support a finding that he did consent. That the judge so found was implicit in his ruling that the evidence was admissible. And having so found and having admitted the evidence, he should have instructed the jury to weigh it in connection with all the other evidence in the case. But allowing the jury to "veto" his ruling did not harm the appellant. This error merely gave him an added, and unwarranted, avenue of escape from the effect of evidence properly admitted. United ed States v. Bianco, 2 Cir., 96 F.2d 97.

█ The remaining points raised by the appellant require no discussion. It was not error to fail to produce the informer as a witness. Jordon v. Bondy, 72 App.D.C. 360, 114 F.2d 599. Nor was the burden on the government to prove negatively that the marijuana found in the possession of the appellant was not transferred to him pursuant to a written order on the blank required by Sec. 2591. The burden of proof to show that any exceptions in the statute were applicable was placed on the appellant by Sec. 2597 of Title 26 U.S.C.A. Int.Rev.Code.

Judgment affirmed.

FRANK, Circuit Judge, dissents with opinion.

FRANK, Circuit Judge (dissenting in part).

I think we should reverse the conviction on the second count for failure to prove the essential fact, i. e., a "transfer" of marijuana cigarettes on March 8, 1946.[1] The purported proof of that transfer consisted solely of the following:

Two federal officers, Reynolds and Mc-Cordic, testified that on March 8 they met an unnamed informer (who did not testify). "Agent Reynolds searched the informer," and Agent McCordic "supplied him with $5.00 of official advance funds with instructions to make purchases from the defendant." The officers then drove the anonymous informer in a car for several blocks; the informer then left the car; the officers saw him enter a shop and talk to the defendant. They testified that they did not see the defendant trans-

---

[1] Defendant "moved to dismiss and set aside the verdict on the basis that it is against the weight of the evidence * * *".

fer anything to the informer. The informer came out of the shop and walked some distance, the Agents following him. He then turned over to Agent Reynolds 10 marijuana cigarettes. There was no testimony whatever that the search of the informer, before he entered the shop, disclosed that he then had no marijuana cigarettes in his possession.[1a]

Therefore, for all that appears from the testimony, the cigarettes he turned over to the Agents after leaving the shop may have been in his possession before he entered it. Accordingly, the government did not prove the transfer directly, and did not do so indirectly by any showing that the informer's sole source of the cigarettes was the defendant:

---

[1a] More in detail, the entire testimony on this subject was as follows:

1. Testimony of Agent McCordic:

"Q. When is the first time you saw the defendant? A. On March 8th.

"Q. What happened? A. On that date, Agent Reynolds and myself met an informer—

"Q. What did you do? A. We met the informer at 145th Street and Riverside Drive at around 3:30 in the afternoon.

"Q. What happened? A. Agent Reynolds searched the informer and I supplied him with five dollars of official advance funds with instructions to make purchases from the defendant.

"Q. What did you do? A. We drove from there to 140th Street and St. Nicholas Avenue and then on to Eighth Avenue where the informer got out of the car and walked east to Seventh Avenue. Agent Reynolds and I was following him and we saw the informer enter the cleaning establishment at No. 2401 Seventh Avenue and talk to a man operating a pressing establishment right back of the window there, the plate glass show window. I stood and watched to make sure we could keep the informer under observation at all times and Agent Reynolds crossed the street and walked by the cleaning establishment to get a close look at who the informer was talking to.

"By the Court:

"Q. You saw him go across the street? A. I did.

"Q. You saw him go close to the window? A. I did, sir.

"Q. Was he in a position to see through the window? A. Yes, sir.

"By Mr. Taylor:

"Q. What did you see? A. Agent Reynolds then returned to the corner and I walked by to obtain a close look at the person that the informer was talking to, and the defendant was operating—standing across a small counter from the informer and talking with him. I then returned to the corner with Agent Reynolds and I, we, were standing on where we could watch through the window and the defendant walked to the back of the store, came on back toward the front of the store and again talked a few minutes with the informer and the informer came out and walked back to 141st Street and St. Nicholas Avenue and we followed him back and he turned over to Agent Reynolds ten marijuana cigarettes.

"Q. You saw him when the defendant handed the cigarettes to the informer? A. No, sir. I did not see the transaction.

"Q. Where were you? A. We were across the street and the window is so you can only see down to about here (indicating). It is painted and we could not see any actual transfers going on.

"Q. What did the informer turn over to you? A. He did not turn over to me anything. He turned over to Agent Reynolds the ten marijuana cigarettes."

2. Testimony of Agent Reynolds:

"Q. Did you see the defendant March 8, 1946? A. I did.

"Q. Will you tell the Court and jury under what circumstances you saw the defendant? A. I saw him talking to an informer.

"Q. Prior to the time you saw him was somebody else with you? A. I was accompanied by Agent McCordic.

"Q. And a government witness or employee? A. An employee.

"Q. What happened? A. The employee was given money with which to purchase marijuana cigarettes.

"By the Court:

"Q. Was he given some money? A. To purchase evidence.

"Q. He was given money? A. Yes.

"Q. Was he given any instructions? A. He was.

"Q. What was the nature of the instructions? A. To purchase marijuana cigarettes. He then proceeded to the Lincoln Tailor Shop at 2401 Seventh Avenue.

"By Mr. Taylor:

"Q. Under your observation? A. Entered the tailor shop, spoke to the defendant who was pressing at the pressing machine. I made this observation from the window, standing at the window. Agent McCordic later joined me and I recrossed the street. I saw the defendant walk to the back of the store, come back again and speak to the informer. The informer left the store. I followed the informer and received from him ten marijuana cigarettes."

My colleagues suggest that the defendant at the trial could have asked the officers whether their search of the informer before he conversed with the defendant showed cigarettes in the informer's possession, and that, by failing so to ask, defendant must be regarded as having conceded the crucial fact at issue. I cannot agree. Such a ruling puts the burden of proving innocence on the defendant. Bihn v. United States, 328 U.S. 633, 637, 66 S.Ct. 1172, 90 L.Ed. 1485; Minner v. United States, 10 Cir., 57 F.2d 506, 512; Williams v. State, 30 Ala.App. 395, 6 So.2d 525; Commonwealth v. Marmo, 137 Pa.Super. 467, 9 A.2d 181.

The government, in its brief, relied on a presumption of "regularity" relating to acts of government officers; it urged that the Agents must be presumed to have found no cigarettes when they searched the informer, because otherwise they would not have been properly discharging their duties in sending him to meet the defendant. But this argument rests on a misinterpretation of this so-called presumption. As I understand the rule, an official is presumed not to have violated a duty imposed on him by statute (as for instance, that an officer gave a notice when the statute so required, or determined facts prescribed by statute as a condition precedent to his action). That presumption is accordingly invoked only where the legality of an official act is questioned. "Nowhere is the presumption held to be a substitute for proof of an independent and material fact"; United States v. Ross, 92 U.S. 281, 285, 23 L.Ed. 707; United States v. Carr, 132 U.S. 644, 653, 10 S.Ct. 182, 33 L.Ed. 483. Moreover, at best the "regularity" here would mean that, in using informers, the government officers are accustomed to employ a routine which involves first searching an informer and finding that he does not have the forbidden object; but, everything else aside, no evidence of such a routine was proved at the trial.

This court, however, from previous cases of this sort, does know that there is such a routine and that government attorneys are fully familiar with it. We should, then, assume that the experienced government counsel in the instant case did not by inadvertence omit to ask the government Agents, when on the witness stand, whether the search of the informer revealed that he had no cigarettes before he interviewed the defendant. In other words, any inference from the Agents' testimony should be favorable to the defendant.

