Commonwealth *v.* Roth, Appellant.

Argued March 30, 1951. Before RHODES, P. J., HIRT, RENO, ROSS, ARNOLD and GUNTHER, JJ. (DITHRICH, J., absent).

*Michael von Moschzisker,* for appellant.

*Maurice W. Sporkin,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY ROSS, J., August 6, 1951:

This is an appeal from a conviction on a charge of receiving stolen goods under the provisions of section 817 of the Act of June 24, 1939, P. L. 872, 18 PS 4817.[1] A jury trial having been waived, the case was heard by the trial judge, who found the defendant

---

[1] "Whoever buys, has, or receives any goods, chattels, money or securities, or any other matter or thing, which shall have been stolen or feloniously taken, either in this Commonwealth or in any other state or country, knowing, or having reasonable cause to know the same to have been stolen or feloniously taken, is guilty of a felony . . .".

guilty and after defendant's motion for a new trial was refused, he took this appeal.

The Commonwealth's case may be summarized as follows: Emanuel Raff, a clerk at the University of Pennsylvania library, testified that on July 21, 1949, between the hours of 6 and 10 p.m., the defendant left a typewriter and a suitcase with him. Logan Clark, Jr., who was then in charge of the lost and found department of the university, testified that "a man who looks to me like Joseph Roth" left another suitcase and typewriter with him on the same date. In compliance with the rules of the lost and found department, the man who looked to Clark like the defendant signed an information card with reference to the articles turned in as "Charles Roth". A handwriting expert called by the Commonwealth testified that in his opinion the defendant had signed the card. The information card contained, inter alia, an election by the signer to have the articles returned to him if unclaimed. The defendant had a brother named Charles Roth.

Both typewriters were shown by their serial numbers to be the property of the John Wanamaker department store. They had been missing from the store and had not been sold. One of the suitcases was exclusive with Wanamaker's; the store had had only one in stock and that one was missing without having been sold. The other suitcase and the contents of the suitcases—women's clothing and linen dinner sets—were identical with similar goods handled by Wanamaker's.

The police learned that the typewriters and suitcases reported missing by Wanamaker's were at the lost and found department of the university, and on July 28, 1949 returned them to the store. Shortly after 2 p.m. of July 29, the defendant called at the lost and found department to claim the articles, and was arrested when he attempted to claim them as his property.

The defendant denied having turned the articles in to the university library lost and found department. To substantiate this denial the defendant sought to establish an alibi.

The defendant apparently felt called upon to explain why he tried to claim the articles turned over to the university authorities in the face of his denial that he was the person who had done so. Accordingly, he testified that on the morning of July 29 at about 10 a.m. his wife was called to the telephone and immediately thereafter "came upstairs saying a woman, unidentified, called her up to tell her that at the University of Pennsylvania, Houston Hall, there was a bag and a typewriter which was in my brother Charles' name and he was going to be in pretty heavy trouble about it unless I could go out there and either identify the property as my own or try to see—try to get him out of the jam somehow". As a result of this telephone call the defendant testified that he went to the university and asked if a bag and a typewriter had been turned into the library. The defendant stated that he attempted to claim the suitcase because he was "dead sure" it was his and the typewriter because he "assumed that possibly" it belonged to his wife.

It is contended on behalf of the defendant that there was insufficient evidence to support the verdict. We are all agreed that there is no merit in this contention. The evidence of the defendant's guilt is wholly circumstantial, but this is not, of course, a bar to his conviction for the crime charged: "When a crime charged is sought to be sustained wholly by circumstantial evidence the circumstances proved should be such as reasonably and naturally to justify an inference of the guilt of the accused, and should be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt." *Com. v. Marino,* 142 Pa. Superior Ct. 327, 334, 16 A.

2d 314; *Com. v. Fisher,* 166 Pa. Superior Ct. 245, 250, 70 A. 2d 372; *Com. v. Holt,* 350 Pa. 375, 387, 39 A. 2d 372; *Com. v. Wentzel,* 360 Pa. 137, 144, 61 A. 2d 309. The Commonwealth is not required to demonstrate the utter impossibility of innocence. *Com. v. Meyers,* 154 Pa. Superior Ct. 8, 11, 34 A. 2d 916; *Com. v. Margie,* 165 Pa. Superior Ct. 84, 88, 68 A. 2d 194. See, also, *Com. v. Gusciora,* 169 Pa. Superior Ct. 27,    A. 2d    .

To support the charge of receiving stolen goods the Commonwealth must prove: (1) that certain goods have been stolen; (2) that the defendant received some or all of such goods; and (3) that he received them knowing the same to be stolen. *Com. v. Marmo,* 137 Pa. Superior Ct. 467, 9 A. 2d 181. It is the contention of the defendant that the Commonwealth's evidence failed to establish the presence of a single one of the enumerated requisites.

Even conceding, the defendant argues, that there was sufficient evidence to prove that the goods were in Wanamaker's and disappeared from there without having been sold, the fact remains that there is no evidence that the goods were not taken by *mistake* rather than *stolen.* The defendant is calling upon the Commonwealth to "demonstrate the utter impossibility of innocence", and this it need not do.

The defendant argues next that the evidence was insufficient to show that he had possession of the stolen goods; at most, he argues, mere *custody* was shown. At the base of this argument is the ingenious suggestion that the defendant's act of placing the goods in the University of Pennsylvania lost and found department is just as consistent with an innocent desire to get the goods back to the true owner as it is with an unlawful desire to salt the goods away. One who carries goods, the defendant concludes, to a place with the intention of returning them to the true owner is a mere custodian

of the goods for the true owner. Aside from the fact that in the ordinary course of events it is highly unlikely that goods turned in at the University of Pennsylvania lost and found department will find their way to Wanamaker's department store with any reasonable degree of regularity, the defendant has failed to supply answers to two questions which immediately suggest themselves. Why did he adopt an alias? Why did he note on the information card an election to have the goods returned to the signer if unclaimed? If it be conceded that the defendant was the person who turned the stolen goods into the lost and found department—and he does not even take the trouble to deny that fact—the inference that he was acting in his own behalf seems not only reasonable but is inescapable. The Commonwealth has met its burden of establishing that the defendant had in his possession goods which had been stolen little more than a month before.

The only remaining question is whether there was evidence from which it could be reasonably inferred that the defendant received the goods *knowing* them to be stolen. In recognition of the difficulties attendant upon proving what amounts to a state of mind, our courts, in the interest of justice, have accorded the prosecution a procedural advantage with respect to such proof. In *Com. v. Joyce,* 159 Pa. Superior Ct. 45, at page 48, 46 A. 2d 529, we stated: ". . . unexplained possession in the defendant of property recently stolen may be evidence of guilt. . . . [But] it is for the jury [or other trier of fact] alone to say whether the guilt of a defendant is a reasonable inference of fact, fairly deducible from his possession of recently stolen property, in the light of all the circumstances including the reasonableness of his explanation, if any, as to how he came by them." See also *Com. v. Wojdakowski,* 161 Pa. Superior Ct. 250, 53 A. 2d 851, and *Com v. Gusciora,* 169 Pa. Superior Ct. 27, 82 A. 2d 540, supra.

In the present case, the defendant offered not one word of explanation as to how he came to have possession of recently stolen goods. At the trial he chose to deny that he had ever had possession of them, and attempted to support his denial with a worthless alibi, and an explanation of how it happened that he was the one who arrived to claim the goods is so incredible as to be unworthy of belief. In the light of all the circumstances the guilt of the defendant was a reasonable inference of fact.

Judgment affirmed.