**[J-39-2024] [OAJC: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 109 MAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 84 EDA 2022 |
| | : | dated January 9, 2023, Reargument |
| v. | : | denied March 17, 2023, Affirming |
| | : | the Judgment of Sentence of the |
| | : | Delaware County Court of Common |
| RASHEED MUHAMMAD, | : | Pleas, Criminal Division, at No. CP- |
| | : | 23-CR-0001435-2019 entered |
| Appellant | : | November 30, 2021. |
| | : | |
| | : | ARGUED: May 14, 2024 |

**DISSENTING OPINION**

**JUSTICE McCAFFERY**                    **DECIDED: May 30, 2025**

The Opinion Announcing the Judgment of the Court (OAJC) asserts that there is a legal distinction between mere "possession" and "possession and control." OAJC at 8. While there is reason to question whether "carries" is synonymous with "possession," the OAJC's artificial distinction between "possession" and "possession and control" is both legally and factually wrong. In any event, the OAJC's attempt to *sub silentio* overrule five decades of precedent equating "carries" with "possession" is likely to have unintended consequences. Since I believe our long-standing precedent correctly defines "carries," and further, that the parties and trial court clearly intended the jury to determine the factual question of possession before having the court enter a verdict on the 6105 charge, I dissent.

**A. THE INSTRUCTIONS AND THE SPECIAL INTERROGATORY**

First, it is necessary to set forth what instructions were specifically provided to the jury as well as the special interrogatory the jury was asked to answer. I emphasize the verdict slip was made in collaboration with the parties in order to bifurcate the 6105 charge so that the jury would not be unfairly prejudiced by Muhammad's prior criminal record.

In relevant part, the trial judge generally informed the jury that he was not "the judge of facts[;]" rather, "it was for [the jury] to decide what the true facts are concerning the charges against the Defendant" and the jurors were "the only judges of the facts." N.T., 10/14/2021, at 109. The judge further stated: "In determining the facts, you[, the jury,] are not to rely upon supposition or to guess on any matter which are not in evidence." *Id.* at 110. Additionally, the judge told the jury: "It is the Commonwealth that always has the burden of proving each and every element of the crime charged and that the Defendant is guilty of those charges beyond a reasonable doubt. If the Commonwealth's evidence fails to meet … its burden, then your verdict must be not guilty." *Id.* at 111.

Next, the court charged the jury on "possession," stating:

> For an individual to possess a firearm, three things are necessary. One, the item must be a firearm. Two, the individual must be aware of the presence of the firearm. In other words, he or she must know where and what the firearm is. And three, the individual must have the intent to control and the power to control the firearm. A person does not possess a firearm merely because he or she is aware of the presence … and nature of the firearm or because he or she is physically close to it. Although proof of such facts may be evidence tending to show possession, such facts do not of themselves establish the necessary intent and power to control. Possession means first what it means in ordinary usage. Someone is knowingly holding, **carrying**, or otherwise directly controlling the possession of an item. A person can be guilty of possessing an item even when he or she is not holding it, touching it, or in the same area as the item. That type of possession is what the law calls constructive possession. For there to be constructive possession, it must be proved beyond a reasonable doubt that the individual had both the intent to control an item and the power to control an item. In determining whether or not the Defendant had possession of a firearm, you should consider evidence of all facts and

> circumstances that may shed light on the question of whether the Defendant had the intent to control and the power to control the firearm…. As I have explained when defining a crime involved here, possession must be proved beyond a reasonable doubt.

N.T., 10/14/2021, at 125-126 (emphasis added). The court did not provide further explanation that in actuality, this "possession" instruction was a surrogate for the 6105 charge; if the jury answered in the affirmative, the court intended to provide a stipulation that Muhammad is a "felon not to possess[,]" and impart the whole 6105 instruction. *Id.* at 135.

Then, the trial court supplied the following instruction with respect to the 6106 charge:

> The Defendant has been charged with Carrying a Firearm Without a License. To find the Defendant guilty of this offense, you must find that each of the following three elements have been proven beyond a reasonable doubt. First, that the Defendant carried the firearm in a vehicle. A firearm is … any pistol or revolver with a barrel less than 15 inches. To be a firearm, the specific object charged must either be operable; that is capable of firing a projectile, or if inoperable, that the Defendant had under his control the means to convert the object into … one capable of firing a shot. You may, if you choose, infer that the object was an operable firearm from the way it appears and feels. Second, that the Defendant was not in his place of abode; and that is his home or fixed place of business. And third, that the Defendant did not have a valid and lawfully issued license to carry a firearm.

N.T., 10/14/2021, at 126-127. It should be noted this is the only definition of "firearm" that the jury received. As for the verdict slip (in addition to the other non-firearm charges Muhammad was on trial for), the jury was asked to provide a "guilty" or "not guilty" determination for the 6016 charge:

> Did the Defendant Rasheed Muhammad on December 18, 2018 carry a firearm, to wit a Smith & Wesson 38 Caliber Special, in a vehicle, or carry the firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under the Uniform Firearms Act?

Verdict Slip, 10/14/2021, at 4. The jury responded by checking the "guilty" option for the 6106 charge. *Id.*

As for the final question on the verdict slip, the jury was asked to answer the "possession" special interrogatory:

> Did [Muhammad] on December 18, 2018 possess and have under his control a firearm, to wit a Smith and Wesson 38 Caliber Special?

*Id.* at 4. The jury answered "No" to this interrogatory. *Id.*

First, in affirming the lower courts' decisions, the OAJC recognizes that the question posed to the jury about possession was not a verdict, but rather, a special interrogatory. *See* OAJC at 8 ("Rather, the jury's response reflects their determination he did not possess and control the gun in question." (emphasis omitted)). The OAJC suggests that "the verdict sheet did not connect the interrogatory with the separate offense under Section 6106." OAJC at 5. However, contrary to the OAJC's belief, the 6106 instruction was the only crime-related charge that the jury was given along with the interrogatory. It is obvious the jury only could impute the interrogatory to the 6106 charge since that was the only count that the jury was being asked to decide.

At this juncture, it is necessary to point out the obvious — that possession is a critical element of the 6106 offense. *See Commonwealth v. Peters*, 218 A.3d 1206, 1209 (Pa. 2019). However, this is not a case of inconsistent verdicts involving predicate offenses. *See Commonwealth v. Miller*, 35 A.3d 1206, 1212-1213 (Pa. 2012) (holding inconsistent jury verdicts of guilt on second-degree murder count but acquittal on predicate robbery charge did not require vacating murder conviction); *see also Commonwealth v. Magliocco*, 883 A.2d 479 (Pa. 2005). Rather, this case concerns a predicate fact — possession of a firearm. A defendant cannot be found guilty of 6106 if the factfinder determines the defendant did not possess the firearm or to a greater degree, that the Commonwealth did not prove possession of the firearm beyond a reasonable

doubt. Here, again, following an instruction on possession and then one on 6106, the jury was faced with a verdict sheet that listed the 6106 offense which was followed by the special interrogatory regarding possession. The jury was asked if Muhammad possessed the firearm. The jury answered, "No." There is no ambiguity or confusion regarding that answer and more importantly, no inconsistency. Since the jury did not find Muhammad possessed the firearm, a necessary element of 6106, an acquittal with respect to the charge is demanded.[1]

The Commonwealth contends that "Pennsylvania law does not require consistency between factual findings and the ultimate verdict rendered." Commonwealth's Brief at 13 (*quoting Commonwealth v. Chambers*, 310 A.3d 76, 93 (Pa. 2024)). The Commonwealth's reliance on *Chambers* misconstrues the procedural context and mischaracterizes the legal and grammatical context of the quote. In *Chambers*, the trial court convicted the defendant of two crimes, theft by deception and one count of home improvement fraud and found the defendant not guilty of the others. Yet the court attempted to sentence the defendant for four convictions, including the two charges of home improvement fraud of which its in-court verdict declared as not guilty. The trial court justified this disparity by noting its original in-court verdict was not congruent with its finding of facts — announced shortly after the verdict — but before it proceeded to sentence the defendant.

The defendant appealed, arguing that "the trial court's *sua sponte*, off-the-record modification of the verdict and its imposition of four separate sentences violated his

---

[1] Notably the OAJC correctly recognizes that the question posed to the jury about possession was not a verdict. *See* OAJC at 8 ("Rather, the jury's response reflects their determination he did not possess and control the gun in question." (emphasis omitted)). Further, both parties concede that the jury only returned a verdict on the 6106 charge. *See* Muhammad's Brief at 14-15; Commonwealth's Brief at 8. Instead, the OAJC correctly treats the issue as one based on the sufficiency of the evidence to support the 6106 verdict.

double jeopardy rights[.]" *Chambers*, 310 A.3d at 84.  In reviewing the defendant's appeal, we noted that the fundamental issue centered on the trial court's power to alter its verdict:

> whether the trial court's on-the-record judgment – as stated – constituted a final verdict, or whether the court had the authority later to reform that verdict to align it with the court's (assertedly) true intentions.  If the in-court verdict was, by law, final and unalterable, then double jeopardy principles necessarily prohibit the sentences for the two supplemental counts of home improvement fraud.  We conclude that the court did not have that authority in this case, and that the contested sentences are therefore illegal.

*Id*. at 88-89.  Under Pennsylvania law, a bench verdict is to be treated no differently than a jury verdict, *see id*. at 89.  The mere expression of a contrary intent "is insufficient to satisfy the heavy burden necessary to allow a verdict to be substituted."  *Id*. at 92 (footnote and internal quotation marks omitted).

The *Chambers* Court supported this conclusion by analyzing and approving the reasoning of the Superior Court in a prior decision, *Commonwealth v. Farinella*, 887 A.2d 273 (Pa.  Super. 2005).  The *Farinella* panel also confronted a case where a trial court attempted to change its verdict at sentencing.  *See Farinella*, 887 A.2d at 275.  In rejecting the court's attempt to modify its verdict, the Superior Court panel set forth its understanding of criminal procedure:

> The day has not yet come where the factfinder in a criminal case is obligated to answer special interrogatories and the judgment is molded accordingly by the court.  While this practice is followed in civil court, there is no such parallel in criminal court.  Consequently, since there is no methodology for forcing a factfinder to divulge findings of fact, there is no need for consistency between those findings and the ultimate verdict rendered.  Indeed, it is not necessary that a verdict be consistent with other verdicts rendered in the same trial.  Thus, once announced in open court, there was no basis for looking behind the verdict to the factfinder's reasoning or specific findings of fact, nor was there a basis for correcting what was, upon its face, a perfectly valid verdict.

*Id.* at 276 (citations omitted).

The *Chambers* Court recounted the above-stated *Farinella* analysis and observed "[t]he [*Farinella* panel] accurately noted that Pennsylvania law does not require 'consistency between factual findings and the ultimate verdict rendered.'" *Chambers*, 310 A.3d at 93 (citing *Farinella*, 887 A.2d at 276) (footnote and original brackets omitted). Further, while this passage from *Chambers* is an accurate partial quote of *Farinella*, the omitted portion of the sentence ("Consequently, since there is no methodology for forcing a factfinder to divulge findings of fact,") indicates the issue currently before us (whether the jury's answer to the special interrogatory conflicts with the jury's verdict on the 6106 charge) was not at issue before the *Farinella* Court. In other words, the partial quote does not represent an attempt to apply the law to specific facts of the case, but rather a statement of general jurisprudence. Indeed, the *Farinella* panel stated that the circumstances here **were not possible under Pennsylvania law**: "The day has not yet come where the factfinder in a criminal case is obligated to answer special interrogatories[.]" *Farinella*, 887 A.2d at 276.

While *Chambers* and *Farinella* concerned attempts to modify verdicts, herein, there was no attempt to alter, as a matter of factual history, the jury's verdict on the 6106 charge. However, we must still assess whether the evidence was sufficient, as a matter of law, to support the jury's verdict.

I agree that the procedure utilized by the trial court here is not countenanced by our Rules of Criminal Procedure and attendant case law. Nevertheless, the fact remains that we must decide the issue before us. In that vein, I note there is no precedent that is directly on point with the present case. Instead, I address the circumstance, perhaps unique in the modern history of Pennsylvania criminal law, where an explicit finding of fact rendered by the factfinder, but divorced from any verdict, conflicts with the factfinder's

general verdict on a particular charge. The Commonwealth urges us to treat these circumstances as identical to merely inconsistent verdicts, since the jury could have "reasonably assume[d] that answering yes on [the possession question] would expose defendant to further punishment." Commonwealth's Brief at 17. Thus, the Commonwealth contends that the "no" answer to the question of possession "could have been a compromise or a show of lenity on the jury's part." *Id.* This is pure guesswork.

This sort of "looking behind" the jury's explicit decision is precisely what our law does not permit. There is no need to infer the jury's rationale or reasoning to conclude the jury found Muhammad did not possess the firearm at issue; that finding is the only legal and factual conclusion that can be drawn from the jury's answer on the verdict sheet. Since the jury did not find Muhammad possessed the firearm, a necessary element of 6106, a not guilty verdict is required on the 6106 charge.

My scrutiny does not end there. The OAJC also makes another factual error. The OAJC concedes that Muhammad was not carrying a firearm on his person. *See* OAJC at 7 ("Here, the evidence demonstrated the police recovered an operable firearm from the center console of a car parked on a public street."). Yet the OAJC believes that since the jury interrogatory asked if Muhammad possessed **and** controlled the firearm, the jury did not specifically address the distinct question of whether Muhammad merely possessed the firearm. However, since the firearm was not on Muhammad's person, this distinction is illusory based on the instructions given to the jury here.

Under the instructions given to the jury, the concept of "control" was subsumed within the definition of "possession." The OAJC's conclusion that "possession" is distinct from "possession and control" is wrong as a matter of fact in the case before us: the jury was properly instructed that for the Commonwealth to establish Muhammad possessed a firearm that was not found on his person, it is required to prove "constructive

possession," and constructive possession requires "intent … and the power to control the firearm." As far as the legal instructions given to the jury, which we must presume the jury followed, there is no distinction between the concepts of "possession" and "control."

The OAJC's factual error leads to a significant legal error. As mentioned above, the OAJC concedes that the firearm was not found on Muhammad's person. Accordingly, to prove he possessed the firearm, the Commonwealth was required to establish constructive possession. Constructive possession is a legal fiction, used to address the reality of criminal law enforcement. *See Commonwealth v. Johnson*, 26 A.3d 1078, 1093 (Pa. 2011). Constructive possession may be established where the Commonwealth proves that the defendant had the ability to exercise conscious control over the contraband and the intent to exercise that control. *See id*. Neither party contends that the trial court erred in instructing the jury on constructive possession, or disputes that constructive possession requires "intent … and the power to control the firearm." As a matter of law, these instructions were correct. *See Peters*, 218 A.3d at 1209.

I thus turn to the OAJC's implicit overruling of fifty years of precedent that defines Section 6106 as a possessory offense. The statutory language underpinning the 6106 charge declares a person who "carries a firearm" on his person or in a car without a license commits either a felony or a misdemeanor, depending on circumstances not relevant to this appeal. 18 Pa.C.S. § 6106. The OAJC relies upon the absence of the word "possess" and "control" from Section 6106, and instead focuses on the use of the word "carries." *See* OAJC Opinion at 8. Both the OAJC and the Commonwealth highlight that other sections of the Uniform Firearms Act, 18 Pa.C.S. §§ 6101-6128, notably Sections 6105 and 6110.2, predicate criminal liability on "possession" of the firearm. *See* 18 Pa.C.S. §§ 6105, 6110.2. Thus, the Commonwealth contends, and the OAJC implicitly holds, the legislature intended to criminalize behavior distinct from "possession" when it

utilized "carries" in Section 6106.  *See* OAJC at 8 ("The crime of carrying a firearm without a license, however, does not require a finding of possession and control of the weapon."). Further, the OAJC explicitly holds that "carries" is completely distinct from "control," even where the firearm is not found on the defendant's person.  *See id*.  I fear the havoc this interpretation will wreak on our trial courts.

As my colleague notes in his Concurring and Dissenting Opinion:  "'Carrying' a firearm for purposes of Section 6106 requires either actual physical possession or constructive possession of the firearm.  Actual physical possession necessarily involves control.  Constructive possession, in turn, requires the power and intent to control."  J. Wecht's Concurring and Dissenting Opinion at 4-5 (citing *Peters*, 218 A.3d at 1209 and *Commonwealth v. Townsend*, 237 A.2d 192, 195 (Pa. 1968)).  In other words, our case law has held that "carrying" encompasses "possession."

To delve even further, in construing Section 6106, we seek "to ascertain and effectuate the intention of the General Assembly."  1 Pa.C.S. § 1921(a).  The primary indicator of the legislature's intent is the statute's plain language.  *See Commonwealth v. Lehman*, 311 A.3d 1034, 1044 (Pa. 2024) (citation omitted).  To interpret the meaning of words that a statute does not explicitly define, "we turn to an examination of dictionary definitions."  *Ursinus College v. Prevailing Wage Appeals Board*, 310 A.3d 154, 171 (Pa. 2024) (internal quotation marks and citation omitted). If the plain language is clear and unambiguous, that unambiguous interpretation controls.  *See Lehman,* 311 A.3d at 1044.

On the other hand, if the plain language is ambiguous, we must go beyond the text and consider other factors.  *See A.S. v. Pennsylvania State* Police, 143 A.3d 896, 903 (Pa. 2016).  These factors include but are not limited to: "the occasion and necessity for the statute or regulation; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other statutes or

regulations upon the same or similar subjects; the consequences of a particular interpretation; and administrative interpretations of such statute." *Id*. (citation omitted).

To illuminate my disagreement with the OAJC, I note the Supreme Court of the United States addressed a similar, but distinct question in *Muscarello v. U.S.*, 524 U.S. 125 (1998).[2] There, the Court addressed the proper construction of "carries a firearm" in a federal statute, 18 U.S.C. § 924(c)(1).[3] *See Muscarello*, 524 U.S. at 126. The appellant argued that Section 924(c)(1) did not cover circumstances where the firearm was locked in a glove box of a vehicle in which the defendant was located. Importantly, however, that federal statute did not contain explicit language, such as that used in Section 6106, criminalizing *carrying* a firearm "in any vehicle." 18 Pa.C.S. § 6106(a). This circumstance, in addition to the fact that the federal statute was enacted by a different legislature at a different time from Section 6106, limits the persuasiveness of the analysis in *Muscarello*.

Nonetheless, the *Muscarello* decision is informative, in that it confirms my independent conclusion that "the word 'carry' has many different meanings[.]" *Muscarello*, 529 U.S. at 128. Black's Law Dictionary contains no less than seven different definitions, *see* Black's Law Dictionary (11th Ed. 2019), while the Merriam-Webster online dictionary contains 23 definitions for "carry" as a transitive verb alone, *see* https://www.merriam-webster.com/dictionary/carry (last accessed 6/5/2024). Thus, there is inherent ambiguity in construing the term according to dictionary definitions.

I therefore turn to how the crime has been construed historically. Section 6106 traces its history back at least as far as 1939. "In the 1939 Uniform Firearms Act, the

---

[2] 18 U.S.C. § 924(c)(1) was amended in 1998 to include conduct previously excluded when *Muscarello* was decided.

[3] Section 924(c) provided for increased penalties for a defendant who "uses or carries a firearm," while committing "any crime of violence or drug trafficking crime[.]" 18 U.S.C. § 924.

General Assembly declared criminal the concealed carrying of firearms." *Commonwealth v. Pope*, 317 A.2d 887, 888 (Pa. 1974) (internal quotation marks omitted).[4]  Contrary to Muhammad's assertion, the Superior Court initially held that the "Commonwealth need not prove more than the *presence* of the firearm in the car while [the] accused was inside." *Commonwealth v. Festa*, 40 A.2d 112, 116 (Pa. Super. 1944) (emphasis added).  The OAJC implicitly revives this construction of the crime.

The summary conclusion that mere presence in the same vehicle was enough, however, did not follow through in subsequent precedent.  In 1962, the Superior Court opined that a conviction for carrying firearms without a license "cannot be sustained if [the defendant] had no knowledge that the firearms … were in the automobile." *Commonwealth v. Whitman*, 186 A.2d 632, 633 (Pa. Super. 1962).  The panel further explained that the "defendant's knowledge of the presence of [the firearms] may be inferred from all the surrounding circumstances." *Id*. (emphasis omitted).  Thus, while the

---

[4] The relevant section of the 1939 Uniform Firearms Act was Section 628(e).  In 1963, it was renumbered as 18 P.S. § 4628(e).  In 1973, it was renumbered as its current citation, 18 Pa.C.S. § 6106(a).

"Before 1972, the Commonwealth's criminal law was a conglomeration of statutory law and common law – the latter filling the void in those areas where the former was silent." *Commonwealth v. Howard*, 257 A.3d 1217, 1235 (Pa. 2021) (Wecht, J., concurring) (citation and internal quotation marks omitted).  Prior to that, there had been several attempts to consolidate and codify Pennsylvania's criminal law:

> Pennsylvania's 1860 Criminal Code was not in an any sense of the word complete because it did not purport to cover important areas of criminal law which were still controlled by the ancient and nebulous common law.  Nor did the State's Penal Code, enacted in 1939, materially improve the situation, although the 1939 Code made some progress in organizing scattered pieces of criminal legislation.

Criminal Law Reform In Pennsylvania:  The New Crimes Code, Sheldon S. Toll, Dickinson Law Review, Volume 78, Issue 1 at 1, 1973-1974.  The 1972 Crimes Code classified crimes and defined them "in clear and modern language." *Id*.

term "possess" was not used, something more than mere presence in the same vehicle was required to establish the crime of carrying a firearm without a license.

In 1965, this Court reviewed a case where a defendant was convicted of violating then-Section 4628(e). The Court referred to the crime as "possession of a firearm without a license." *Townsend*, 237 A.2d at 193. Because the firearm was not found on the defendant's person, "the Commonwealth premised its case upon a theory of joint possession." *Id*. (citing *Whitman, supra*). The *Townsend* Court reversed the conviction, noting that while the defendant conceded there was sufficient evidence he had the power to control the firearm, the evidence was otherwise insufficient to establish he had the intention of exercising control over it. *Id.* at 194-195.

In 1973, the Superior Court reviewed a conviction for "unlawfully carrying a firearm without a license in a vehicle," based on the pre-1972 statute. *Commonwealth v. Gladden*, 311 A.2d 711, 711 n.1 (Pa. Super. 1973). The trial court had dismissed the firearm charge, concluding that "a necessary element of possession – intent to control – had not been shown[.]" *Id*. at 712. The Superior Court reversed, but not because possession was irrelevant to the charge, stating: "We believe that the evidence in the present case, read in the light most favorable to the Commonwealth, with its reasonable inferences being given effect, would warrant a conclusion that the appellee knew of the presence of the [firearm,] intended to control [it,] and had the power to do so." *Id*. at 714.

That same year, this Court addressed a claim that the Commonwealth had failed to present sufficient evidence of possession to support the appellant's conviction for carrying a firearm without a license. *See Commonwealth v. Armstead*, 305 A.2d 1, 2 (Pa. 1973).[5] The *Armstead* Court, after defining the issue before it in terms of possession,

_____

[5] The opinion does not provide a date for the infraction. Nonetheless, we infer that this case dealt with the pre-Crimes Code version of the crime, as the appellant was convicted in 1971.

held that the "Commonwealth had no direct proof that appellant knew of the presence of the weapon, which would be required to prove that he had the necessary intention to exercise control." *Id*. The Court concluded the "Commonwealth has not proved that appellant knew of the presence of the gun[,]" and therefore reversed the judgment of sentence. *Id*. (citations omitted).[6]

Two years later, the Superior Court once again addressed a challenge to the sufficiency of the evidence supporting a conviction under the pre-1972 version of Section 6106. *See Commonwealth v. Duffy*, 340 A.2d 869, 870 (Pa. Super. 1975) (identifying date of charged criminal activity as October 19, 1972 – 48 days before the modern Crimes Code was enacted). The panel reversed the judgment of sentence, holding that since "the contraband was not found on appellant's person he was properly convicted only if the Commonwealth proved joint constructive possession. … Appellant's convictions must be reversed because the Commonwealth … failed to prove that appellant had the requisite intent to exercise control." *Id.* (citations omitted).

Since then, Section 6106 has been interpreted to require the Commonwealth to prove constructive possession when the firearm is not found on the defendant's person. *See Commonwealth v. Boatwright*, 453 A.2d 1058, 1059 (Pa. Super. 1982) ("Because the firearm was not found on appellant's person, he could properly be convicted only if the Commonwealth proved joint constructive possession with the other occupants of the vehicle."); *Commonwealth v. Magwood*, 538 A.2d 908, 909 (Pa. Super. 1988) (abrogated on other grounds) (opining the trial court correctly instructed the jury that "to carry a weapon, essentially, the defendant must be found to have been in possession of that weapon."); *Commonwealth v. Woody*, 679 A.2d 817, 820 (Pa. Super. 1996) (affirming

---

[6] To the extent the Superior Court's declaration in *Festa* – that the Commonwealth need only prove mere presence in the same vehicle to convict a defendant for carrying a firearm without a license – remained precedential, *Armstead* clearly overruled it.

judgment of sentence because the jury could "reasonably infer, from the totality of circumstances, that appellant maintained constructive possession of the firearm[.]"); *In re R.N.*, 951 A.2d 363, 370 (Pa. Super. 2008) (affirming delinquency adjudication because the "Commonwealth provided sufficient evidence to prove that Appellant was a minor who possessed a firearm without a license."); *Commonwealth v. Peters*, 218 A.3d 1206, 1212-1213 (Pa. 2019) (recognizing that constructive possession applies to Section 6106 charges in general, but rejecting its use as the sole basis for concluding a defendant concealed the firearm "about her person.").

The OAJC would overrule this entire line of precedent *sub rosa*, with no consideration of the consequences. I acknowledge that the precedent itself is divorced from any explicit consideration of whether "carries" is something distinct from "possesses." But that does not mean we should ignore the precedent. Rather, we should acknowledge the issue and confront it directly.

In this vein, I note the 1972 Crimes Code incorporated this Court's precedent importing the concept of constructive possession into other sections of the 1972 Code even though "possession" was not an explicit element in the prior statute. For example, the 1939 statute defining the crime of receiving stolen property did not use the term possess: "Whoever buys, has, or receives any goods … knowing, or having reasonable cause to know the same to have been stolen or feloniously taken, is guilty of a felony." *See Commonwealth v. Roth*, 82 A.2d 710 n.1 (Pa. Super. 1951) (quoting 18 P.S. § 4817). This Court nonetheless required the Commonwealth to prove constructive possession to sustain a conviction of violating Section 4817. *See Commonwealth v. Davis*, 280 A.2d 119, 121 (Pa. 1971). Clearly, the legislature approved of this gloss, as the 1972 version of the crime explicitly defined "receiving" as "acquiring possession, control or title, or lending on the security of the property." 18 Pa.C.S. § 3925(b).

In contrast, the legislature did not explicitly adopt the concept of possession, constructive or otherwise, in the 1972 version of the Section 6106. This certainly could be argued to indicate that the legislature explicitly rejected the conflation of "possession" with "carrying."

However, since this Court's proclamation in *Armstead* that constructive possession was a necessary element of the crime of carrying a firearm without a license when the firearm is not found on the defendant's person, the legislature has amended Section 6106 no less than seven times. If the legislature objected to the judiciary's construction, it had ample opportunity to correct that construction. But it did not.

Accordingly, I would conclude that despite the OAJC's implicit overruling of decades of precedent, constructive possession remains and is an element of the crime of carrying a firearm without a license when the firearm is not found on the defendant's person. I object to any attempt to overrule such long-standing precedent without any consideration of the consequences. While the OAJC presumes the term "carries" applies to the circumstances here, it makes no attempt to define the concept. As the Supreme Court of the United States highlighted in *Muscarello*, this is no simple task. And yet, if the OAJC's reasoning carries the day, trial courts will henceforth be tasked with defining this term from scratch with no guidance from this Court.

For example, if we tweak the facts of this case slightly, and police approached the vehicle after Muhammad's conspirators had returned, we face an issue that is now ambiguous under the OAJC's analysis. There are now three people in the car. Do they **all** "carry" the firearm located in the center console, as they are all in the car with the firearm? What if the driver, Muhammad, can establish that he was completely unaware of the firearm in the vehicle? Is Section 6106 now a strict liability crime? Without reference to the concepts of "possession" or "control," how should a court instruct a jury

on the meaning of "carries?" The OAJC's unnecessary severance of long-standing precedent would cast trial courts adrift in a sea of unanswered questions with no map. I prefer to retain the well-established signposts provided by the concepts of possession and constructive possession.

Since constructive possession is a necessary element of the 6106 charge where the firearm was not found on Muhammad's person, the jury's specific factual finding that Muhammad did not possess a firearm renders the evidence insufficient as a matter of law to sustain a guilty verdict on the 6106 charge. For instance, if a jury made an explicit factual determination that a defendant did not intend to kill a victim, we could not countenance a finding of guilty on a first-degree murder charge nor would we allow a possession with intent to deliver a controlled substance conviction to stand if the jury determined there was no possession or control of contraband.

The *Farinella* quote, *supra*, notes that the day has not yet come where the factfinder in a criminal case is obligated to answer special interrogatories and have the verdict entered accordingly. That day has come, and it is now directly before us. The trial court and counsel agreed to just such a procedure; and agreed upon the special interrogatory asking the factfinder if Muhammad "possessed" a firearm. The jury answered no. Since possession — constructive or actual — is a required element of a 6106 conviction, the factfinder's determination is dispositive.

While the Commonwealth asserts the jury was unlikely to have understood possession is an element of the 6106 charge, since the court's charge to the jury did not inform them of this requirement, this argument conflates sufficiency review with a challenge to the adequacy of the jury instructions given by the court. *See*, *e.g.*, *Commonwealth v. Cannavo*, 199 A.3d 1282, 1291 (Pa. Super. 2018) ("Simply stated, our review of sufficiency claims is not what instructions the jury followed to reach its

verdict[.]").  In any event, the Commonwealth's argument once again asks us to overlook the jury's explicit finding in contravention of our established precedent.  We need not guess at the jury's reasoning.  Instead, we simply must accept its answer only in the context of the question presented on the verdict sheet.

**B. CONCLUSION**

In summary, I conclude that (1) as a matter of law, the verdict slip utilized here asked the jury to make an explicit factual finding, not render a verdict, regarding whether Muhammad possessed the firearm in question; (2) the crime of carrying a firearm without a license contains an implicit element of constructive possession when the firearm is not found on the body of the defendant; and (3) in the unique circumstances of this criminal case, when the jury found Muhammad did not possess the firearm in question, such factual determination had a preclusive effect on a finding of guilty under Section 6106.  I therefore dissent.

Justice Donohue joins this dissenting opinion.